598

**UNITED STATES, Appellee,**

v.

**Private E-1 James G. CAMERON, Jr.,
SSN 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, United States
Army, Appellant.**

**CM 440652.**

U. S. Army Court of Military Review.

29 Oct. 1981.

Major Raymond C. Ruppert, JAGC, Captain Courtney B. Wheeler, JAGC, and Captain Guy J. Ferrante, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain John J. Park, Jr., JAGC, were on the pleadings for appellee.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

Pursuant to his pleas, appellant was found guilty by a military judge sitting as a general court-martial of attempted escape from custody, escape from custody (on a second occasion), willful, wrongful damage of private property ($20.00 damage), larceny of a value of $28.40, housebreaking, 14 days AWOL, 18 days AWOL, and violation of a general regulation.[1]

Four of appellant's assignments of error center around his pleas to the last specification and charge. A brief recitation of facts is in order. The specification originally alleged a violation of paragraph 13a(10), USAREUR Regulation 632–10, as changed, by wrongfully possessing a switchblade knife. In the course of the inquiry required by *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), the military judge misread the regulation as only prohibiting carrying a switchblade knife in a concealed manner. In fact, carrying certain articles in a concealed manner was prohibited by paragraph 13a, but a switchblade knife was not one of them. Rather mere wrongful possession of a switchblade knife without more was prohibited by paragraph 13b(10) of that regulation. The error in the specification, then, was merely the erroneous substitution of subparagraph a for subparagraph b. The judge's misreading of the regulation and his conclusion that the specification required the allegation of carrying the switchblade in a concealed manner re-. sulted in him recessing the court briefly to permit the Government to decide what it wanted to do with the specification. Fol-

lowing the recess, the Government moved to amend the specification by inserting the phrase "in a concealed manner." Despite a comment from the judge that the amendment changed the specification from one that did not allege an offense to one that did and despite an express invitation to object, the defense did not do so. The amendment was permitted and the *Care* inquiry proceeded. Later, in discussing a written pretrial agreement, the judge stated it as one of his purposes to "make sure that nobody made any promises or agreements...that don't appear there." He was assured by the accused that nobody forced or pressured him to enter into the agreement and that he did so voluntarily and on the initiative of the defense. Similarly, he was expressly assured by the accused, the defense counsel and the trial counsel that there were "no agreements of any kind which [did] not appear in Appellate Exhibits III and IV (the written agreement)." Finally, he was assured by the civilian defense counsel that "nothing in [the] agreement required [him] to forego litigation of any motions to dismiss or any motions for appropriate relief...."

Now before us, appellant, supported by affidavits from both his civilian defense counsel and his detailed military counsel, asserts that he was "substantially prejudiced by an undisclosed *sub rosa* agreement between the trial counsel, the appellant and his counsel." Counsels' affidavits disclose that, during the recess that immediately preceded that Government's amendment of the pertinent specification, the detailed defense counsel expressed it as his intention to move to dismiss the specification for failure to state an offense. The trial counsel's response was to state that, if they did that, the Government would withdraw from the pretrial agreement and add charges for some larcenies that were apparently discovered subsequent to the Article 32, 10 U.S. C.A. § 832 investigation of the present

---

1. He was sentenced to a bad-conduct discharge, total forfeitures and confinement at hard labor for two years. Pursuant to a pre- trial agreement, the convening authority suspended the confinement in excess of 18 months but otherwise approved the sentence.

charges.[2] Based upon this assertion of the trial counsel, the accused, upon the advice of his two counsel, decided that the motion to dismiss should not be made.

Appellant also utilizes trial counsel's statement as grounds for asserting that he "was substantially prejudiced by the threatening and coercive actions of the trial counsel in preventing [him] from making a motion to dismiss Additional Charge·II and its specification." This latter assignment of error incorporates a further allegation of impropriety in that appellant asserts a violation of *United States v. Holland*, 1 M.J. 58 (C.M.A.1975), which prohibits requiring an accused to forego making motions in order to obtain the benefit of a sentence limitation.

Finally, appellant asserts that the military judge erred to his substantial prejudice by accepting his plea of guilty to a specification that failed to state an offense both before and after its amendment and that appellant was misadvised during the providency inquiry that the maximum imposable confinement was ten years and six months whereas it in fact was nine years and six months based upon *United States v. Lowe*, 4 U.S.C.M.A. 654, 16 C.M.R. 228 (1954) and *United States v. Welch*, 40 C.M.R. 638 (A.B.R.), *affirmed* 19 U.S.C.M.A. 134 (1969).

■ We believe we can cut to the dispositive issue by assuming without deciding that the trial counsel's remarks and the defense's response constituted both a *sub rosa* agreement[3] and one that violated *Holland, supra*. However, we cannot overlook what would have occurred had appellant's

counsel been permitted to make his motion to dismiss. Undoubtedly, it would have been denied when it was discovered that the only defect was one of citation to the incorrect subparagraph of the regulation and where it was manifest that appellant was not misled to his prejudice.[4] Paragraph 28c, Manual for Courts-Martial, United States, 1969 (Revised edition). Accordingly, it is difficult for us to discern how the assumed improper denial of an opportunity to present a patently nonmeritorious motion could have prejudiced the appellant. In very few words, it did not.

■ As regards appellant's claim that he was misadvised as to the maximum imposable confinement, while he is correct in that the judge did miscalculate it, the misadvice was by merely one year longer than the correct term of nine and a half years. When his offenses, the sentence adjudged and the sentence approved pursuant to his pretrial agreement are taken into consideration, it becomes clear that he suffered no prejudice from the error.

■ Finally, appellant claims that he was prejudiced by the Government's failure to serve a copy of the staff judge advocate's post-trial review on detailed defense counsel. In an affidavit filed in this Court detailed counsel states that, at the conclusion of appellant's trial, he indicated to civilian defense counsel and the trial counsel that he "wanted to file a [*U. S. v.*] *Goode* [1 M.J. 3 (C.M.A.1975)] rebuttal in this case."[5] In fact, the review was served on civilian defense counsel, who was lead counsel in the defense team. After receiving service,

---

2. Our reading of the pretrial agreement is such that the Government could not unilaterally withdraw except prior to trial. Accordingly, the trial counsel erred (as did the defense) in believing that the Government possessed this option in the course of the trial.

3. We emphatically condemn the practice of this appellant and his counsel to perpetrate a fraud on the trial court by denying the existence of *sub rosa* agreements and constraints on motions and then later assert them on appeal. This is particularly true as regards whether or not they felt constrained from making motions. We are sorely tempted to simply hold that an appellant will not be permitted to deny what he earlier asserted to gain a benefit. As it is not

necessary to the disposition of the instant case, we will not predicate our decision on appellant's fraud but reluctantly will proceed on the merits.

4. This also disposes of appellant's claim that the specification neither before nor after amendment stated an offense. It did and still does, the "in a concealed manner" language being mere surplusage.

5. One might wonder how it could be determined at the conclusion of trial what would be contained in the post-trial review that would require rebuttal.

civilian counsel returned the review without comment. We cannot take the remark of detailed counsel immediately at the conclusion of the trial to constitute a designation by both defense counsel that detailed counsel instead of lead counsel should be served with the review nor can we take it as a release by the appellant of the lead counsel's post-trial responsibilities on his behalf. While both counsel might have been served, the Government cannot be said to have erred in serving the lead counsel and leaving to the defense team the internal allocation of work to satisfy their joint responsibilities to their client. In this regard, just as at trial where representation by co-counsel is joint and they speak with one voice and pleadings and briefs both at trial and on appeal are filed jointly by co-counsel not severally, we do not believe it proper that there be more than a single *Goode* response filed by co-counsel on behalf of a single accused. The suggestion by the Chief Judge in *United States v. Robinson*, 11 M.J. 218, 224 (C.M.A.1981), that each defense counsel be *served* a copy of the review in doubtful situations does not affect our view that any response represent a single defense position.

The findings of guilty and the sentence are affirmed.

Senior Judge MITCHELL and Judge MILLER concur.